*** NOT FOR PUBLICATION ***

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RASHAD SMITH,<br>    Petitioner,<br>  v.<br>UNITED STATES OF AMERICA,<br>    Respondent. | Civil No. 10-2769 (FLW)<br><br>OPINION |

  Petitioner Rashad Smith ("Petitioner" or "Smith"), a federal inmate proceeding *pro se*, filed the instant action as a petition to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. Presently before the Court is the United States of America's ("the Government's") motion to dismiss Smith's petition, along with Smith's motion to appoint counsel and for an evidentiary hearing. For the following reasons, the Government's motion to dismiss will be granted and Smith's motion to appoint counsel and for an evidentiary hearing is denied.

**BACKGROUND**

  On May 15, 2006, criminal complaints were signed and filed against Petitioner for his role in a multi-year drug trafficking conspiracy in Camden, New Jersey. Following a Superseding Indictment returned on May 2, 2007, Petitioner pled guilty to conspiracy to distribute and possess with intent to distribute cocaine and cocaine base under 28 U.S.C. § 846, and entered into a plea agreement on August 16, 2007. Per the plea agreement, Petitioner agreed that he was responsible for the distribution of "at least 1.5 kilograms" of cocaine base.

1

The plea agreement provided that the November 1, 2006, version ("2006 version" or "2006 Guidelines") of the United States Sentencing Guidelines ("the Guidelines") applied to Smith's plea. Under the 2006 version of the Guidelines, the base offense level for 1.5 kilograms of cocaine base was 38. See U.S.S.G. §2D1.1(c)(1). In the plea agreement, Smith stipulated that he was subject to a 4-level increase as an organizer or leader of relevant activity and the Government agreed to seek a downward adjustment of 2 levels for his acceptance of responsibility. The agreement further stated that, should Smith's applicable offense level exceed 16, he was entitled to additional 1-point reduction in his offense level. Taking into account these calculations, the provides "the parties agree that the total Guidelines offense level applicable to Rashad Smith is 39." Plea Agmt., ¶ 6.

Importantly, the plea agreement also contains a waiver provision whereby Smith waives his right to file an appeal under 18 U.S.C. § 3742, or to file a collateral attack under 28 U.S.C. § 2255. Moreover, the agreement includes language stating that Smith knowingly and voluntarily waived his rights to appeal and collateral attack. The wavier provision states that it is binding even if the Court adopts a different Guidelines calculation than that stipulated to by the parties. The only exception included in the waiver provision is that either party could appeal the sentencing court's determination of Smith's criminal history category. At the conclusion of the agreement, Smith signed underneath an acknowledgment, which stated "I have received this [plea agreement] letter from my attorney, Scott Krasny, Esq., I have read it, and I understand it fully."

At the plea hearing, the Court reviewed the provisions of the plea agreement with Petitioner and confirmed that he "underst[oo]d the circumstances under which the waiver of appeal and collateral attack applie[d]." Tr. of Plea Hrg. 17:4; id. at 17:8 - 18:22. The Court,

further, asked Smith whether he discussed the waiver with his attorney and whether he was satisfied with the explanation given by his attorney, to which questions Smith answered "Yes." Id. at 18:9-15.

In addition, the Court reviewed the maximum penalty for the crime to which Smith pled, conspiracy to distribute cocaine or cocaine base - 21 U.S.C. § 846, for which the maximum penalty is a sentence of life imprisonment. Id. at 19:20-22. Thereafter, the Court explained the advisory nature of the Guidelines and confirmed that, over the life of the drug conspiracy, Smith and his co-conspirators were "responsible for acquiring in excess of 5 kilograms of cocaine and distributing more than 50 grams of cocaine base …." Id. at 20:1-5. Based on the Court's extensive colloquy, the Court concluded that Smith's plea and waiver was knowing and voluntary.

Prior to sentencing, probation recommended that Smith's total offense level should be 39, which recommendation was consistent with the plea agreement stipulation. Finding Smith to be a career offender, he was assigned a Criminal History Category VI. The advisory Guideline sentencing range was, accordingly, 360 months to life imprisonment.

Also prior to sentencing, on November 1, 2007, Amendment 706 to the Guidelines went into effect. That amendment altered the Guidelines' Drug Quantity Tables such that 1.5 to 4.5 kilograms of cocaine base results in a base offense level of 36, while 4.5 kilograms and above results in a base offense level of 38. This is in contrast to the 2006 version of the Guidelines, which provided that 1.5 kilograms of cocaine base resulted in a base level of 38.

The Court conducted a sentencing hearing on June 6, 2008. At the hearing, the Government proffered that it had evidence and witness testimony that the Petitioner was

responsible for at least 4.5 kilograms of cocaine base. Smith's counsel indicated on the record that Smith conceded to this amount. Tr. Sentencing Hrg. 4:12-25.

Noting that there had been an exchange of letters between the parties prior to the hearing regarding the Guidelines amendment, the Court noted that there was no practical difference between sentencing under the 2006 drug quantity table versus the 2007 table:

> even if a different Guideline was used and if it were a level 36, and we go through the other calculations, and the defendant ended up at a 37 as opposed to a 39 [under the 2006 Guidelines] it still placed him at the same sentencing range, and it would have had actually no effect on the Guideline range itself even if there had been a different amount.

Id. at 6:9-16. The Court then confirmed that Smith's counsel had discussed this with Smith, and counsel indicated that Smith "understands the Guideline calculations were the same." Id. at 6:17-20. Smith confirmed on the record that he understood this. Id. at 6:19-7:4.

Despite his client conceding to the Government's 4.5 kilogram proffer, defense counsel requested that the Court place on the record a summary of the evidence supporting the proffer. Accordingly, the Court indicated on the record that it reviewed the proffer submitted by the Government prior to the sentencing hearing, which proffer consisted primarily of the trial testimony of Smith's co-conspirators. The Court concluded that the testimony "clearly" supported a finding that the conspiracy as a whole trafficked more than 4.5 kilograms of cocaine base. Id. at 8:8-14.

Thereafter, the Court explained its Guidelines calculation based on the 2007 Guidelines. See id. at 8:24-10:2. First, the Court applied a base offense level of 38 based on the 4.5 drug quantity amount. Then, the Court applied the U.S.S.G. §3B1.1A 4-level enhancement as indicated in the plea agreement, resulting in an adjusted offense level of 42. Determining that there were two qualifying felony drug convictions, which would make Smith a career offender,

4

the Court noted that an offense level of 37 would apply on account of his career offender status. However, because the adjusted offense level was already 42, on account of the §3B1.1A enhancement, the offense level remained at 42. Deducting three levels for acceptance of responsibility along with the additional level promised in the plea agreement, the Court concluded that the final adjusted offense level was 39.

The Court then calculated Smith's criminal history category. Id. at 10:3-22. Specifically, the Court reasoned that Smith was on parole during the commission of the drug offense to which he pled. This resulted in two criminal history points. Since this offense was committed within two years following his release from custody on January 28, 2005, an additional point was added, bringing the total to 3 points. The remaining 17 points came from Smith's extensive history of prior convictions, beginning at the age of 19 through his age, at the time of sentencing, of 35. Altogether, the total criminal history points amounted to 20 points, which placed Smith in category of VI.

The Court further noted that consideration of Smith's career offender status, along with the qualifying offenses, would likewise place him in criminal history category VI. However, the Court did not rely upon Smith's career offender status in calculating his status but relied, instead, on the accumulation of points detailed *supra*. Smith's counsel did not object to the Court's calculation, except to note that Smith's early convictions were for concurrent state sentences in the 1990s and that "[o]ne of the predicate offenses for career offender appears to be during the time of [the instant] conspiracy, and the same factual scenario as this conspiracy [so] the Court [should] consider that in assessing an appropriate sentence under [18 U.S.C. §]3553(a)." Id. at 13:22 - 14:21.

Having conducted the hearing and reviewed the Presentence Investigation Report ("PSR"), the Court sentenced Petitioner at the low end of the Guidelines range to 360 months imprisonment.  See Judgment, Crim. No. 06-449, Entry 284.  Petitioner filed a timely appeal of his sentence, on June 13, 2008, with the Third Circuit.  The Government moved for summary affirmance and the Circuit granted the Government's motion on April 29, 2009, citing solely to Petitioner's waiver of his right to appeal.

Petitioner then filed the instant habeas petition on June 1, 2010, seeking to vacate, set aside or correct sentence under 28 U.S.C § 2255.[1]  In his petition, Smith argues that his counsel's failure to raise a breach of plea agreement claim (based on the fact that the Government increased the amount of cocaine to 4.5 kilograms) amounted to ineffective representation.  As noted, the Government moves to dismiss the petition in light of the plea waiver and on the merits.  Following the Government's motion, Petitioner moved for appointment of counsel and an evidentiary hearing.  The Court now rules on each motion.

**DISCUSSION**

In light of the Supreme Court's recent ruling in Freeman v. United States, --- S.Ct. ---, 2011 WL 2472797 (2011), and the decisions of other courts that address a defendant's ability to seek reduction of his or her sentence following amendments to the Guidelines, I briefly explain why those decisions do not affect my analysis here.

In Freeman, the Supreme Court held that defendants sentenced pursuant to a plea agreement are entitled to seek reduction of their sentences via 18 U.S.C. § 3582(c)(2), where the sentencing range agreed to in the plea agreement is subject to a retroactive amendment of the

---

[1] Petitioner initially filed a habeas petition on April 27, 2010, which petition was docketed as Civil Action No. 10-2090.  The Court then issued a Notice and Order pursuant to U.S. v. Miller, 197 F.3d 644 (3d Cir. 1999), on April 29, 2010.  Consistent with that notice, Petitioner filed the instant action on June 1, 2010.

Guidelines.  Freeman, 2011 WL 2472797 at 3.  The Court's opinion was splintered as to the rationale underlying its decision—with three justices joining Justice Kennedy's plurality opinion and Justice Sotomayor issuing her own concurring opinion.  Both opinions base their decision on application of Federal Rule of Civil Procedure 11(c)(1)(C) to the plea agreement in that case.[2]  Moreover, Freeman calls into question the continuing viability of United States v. Sanchez, 562 F.3d 275 (3d Cir. 2009), in which the Third Circuit held that "relief [for reduction of a sentence] under § 3582(c)(2) is not available for a defendant who has been sentenced pursuant to a Rule 11(c)(1)(C) binding plea agreement."  Id. at 282 n.7.  See Freeman, 2011 WL 2472797 at *11, n.3 (citing Sanchez as adopting a rule inconsistent with Freeman's holding) (Sotomayor, J., concurring).

Important here is Justice Sotomayor's acknowledgement in her concurrence that the Government may

---

[2]  Pursuant to Rule 11(c)(1)(C), the Government and a defendant may enter into a plea agreement specifying that the Government will

> *agree* that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply (such a recommendation or request binds the court once the court accepts the plea agreement).

Fed.R.Civ.P. 11(c)(1)(C) (emphasis added).  Once the court accepts such a plea agreement, the court is bound by the parties' agreement as to the application of the specific sentence, sentencing range, or that a particular provision of the Guidelines applies.  Id.; Freeman, --- S.Ct. ---, 2011 WL 2472797 at *4 (plurality).

In contrast, under the preceding subsection of the rule, Rule 11(c)(1)(B), a plea agreement may "*recommend* . . . that a particular sentence or sentencing range is appropriate or that a particular provision of the Sentencing Guidelines" applies.  Fed.R.Civ.P. 11(c)(1)(B) (emphasis added).  Unlike a agreement governed by Rule 11(c)(1)(C), a recommendation or request made pursuant to Rule 11(c)(1)(B) "does *not* bind the court."  Id. (emphasis added).  See also U.S. v. Keith, 328 Fed.Appx. 112, 115 (3d Cir. 2009) (discussing distinction between a binding "(C)" plea and a non-binding "(B)" plea under Rule 11(c)(1)).

> ensure *ex ante* that a particular defendant's term of imprisonment will not be reduced later . . . [by] negotiating with a defendant to secure a waiver of his statutory right to seek sentence reduction under § 3582(c)(2), *just as it often does with respect to a defendant's rights to appeal and collaterally attack the conviction and sentence*.

Id. at *12 (emphasis added). In Freeman, there was no plea waiver, unlike here, where such an explicit waiver is present. Freeman is further distinguishable in that it addresses a defendant's ability to move pursuant to § 3582, as opposed to mounting a collateral attack based on allegations of ineffective assistance of counsel.[3] For these reasons, Freeman does not affect my analysis in this case and I turn to the dispositive question here of whether, and to what extent, the plea agreement's waiver provision is enforceable against Smith.

*Waiver*

In United States v. Khattak, 273 F.3d 557 (3d Cir. 2001), the Third Circuit held that waivers of appeals are "generally permissible and enforceable." Id. at 561. According to that court, there are two requirements for a waiver to be enforceable: 1) the waiver must have been "entered into knowingly and voluntarily;" and 2) enforcement "would [not] work a miscarriage of justice." Id. at 563. In determining whether a miscarriage of justice would occur if the error

---

[3] Furthermore, one could argue that the plea agreement here was not a Rule 11 (c)(1)(C) agreement that bound the Court to the parties' offense level recommendation. The agreement states that it "does not bind the sentencing judge, who may make independent factual findings and may reject any and all stipulations entered into by the parties," and that the Government "cannot and does not make any representation or promise as to what guideline range may be found by the sentencing judge, or as to what sentence Rashad Smith ultimately will receive." Plea Agmt. at 2-3. That the plea agreement in Freeman was a binding one factored heavily into the Court's decision. See Freeman, 2011 WL 2472797 at *11 (Sotomayor, J., concurring) ("Because the very purpose of a [Rule 11(c)(1)](C) agreement is to allow *the parties* to determine the defendant's sentence, when the agreement itself employs the particular Guidelines sentencing range applicable to the charged offenses in establishing the term of imprisonment, the defendant is eligible to have his sentence reduced under § 3582(c)(2).") (emphasis added); see id. at *13 (Roberts, J., dissenting).

alleged by the defendant is not rectified by operation of the waiver, the Third Circuit directs courts to consider

> [t]he clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result.

Id. at 563 (quoting United States v. Teeter, 257 F.3d 14, 21 (1st Cir. 2001)).  In United States v. Mabry, 536 F.3d 231 (3d Cir. 2008), the Third Circuit extended this waiver jurisprudence to collateral waivers and required that District Courts "conduct an evaluation of the validity of a collateral waiver" in such cases.  Id. at 238.

In regard to the first prong—whether the waiver was knowing and voluntary—courts must independently examine "the terms of the plea agreement and . . . plea colloquy."  Id.  Here, the written plea clearly sets forth that Petitioner waived his right to file an appeal or collateral attack that challenges his sentence if it "falls within or below . . . the agreed total guidelines offense level of 39."  Plea Agmt. at ¶ 8.  Moreover, Petitioner has not pointed to any inadequacy of the plea hearing colloquy, and the Court's review of the colloquy indicates that the requirements of Federal Rule of Criminal Procedure 11(b)(1)(N) are met. That rule directs the court to "address the defendant personally in open court [and] inform the defendant of, and determine that the defendant understands . . . the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence," before the court accepts entry of a guilty plea.  Having reviewed both the plea agreement and the colloquy, it is clear that Petitioner "knowingly and voluntarily" entered into the plea agreement.  Indeed, the Third Circuit implicitly concluded the same in granting the Government's motion for Summary Affirmance on account of the plea agreement waiver provision.

9

Neither is there any indication that enforcing the plea agreement will result in a miscarriage of justice. As noted by the Third Circuit in Mabry, this is a "common sense" inquiry that "look[s] to the underlying facts to determine whether a miscarriage of justice would be worked by enforcing the waiver." 536 F.3d at 242-43. In Mabry, the Third Circuit suggested that manifest injustice might occur when "enforcing a collateral attack waiver would result in barring an appeal expressly preserved in the plea agreement," or in a case where there were "allegations that counsel was ineffective or coercive in negotiating the very plea agreement that contained the waiver." Id. at 243. Smith, however, has not alleged either of these scenarios.

Rather, Smith contends that his counsel was ineffective in failing to object to the Government's proffer of the 4.5 kilograms at sentencing. Had the Government proffered only 1.5 kilograms instead, Smith continues, he would have been entitled to a base offense level of 36 which, ultimately, would have resulted in a lighter guideline sentence. But Smith is wrong— even applying a base offense level of 36, Smith's sentence would have fallen in the same guideline range. Taking into account the 4-level increase as an organizer or leader of relevant activity, and a downward adjustment of 2 levels for Smith's acceptance of responsibility, and the additional 1-point reduction in his offense level promised by the plea agreement, Smith would have been sentenced at a Guidelines offense level of 37, which calls for 360 months to life. Id. at 6:9-16. Since Petitioner was sentenced at an offense level of 39, which also calls for 360 to life, he suffers no prejudice in having the waiver enforced against him.

Smith erroneously calculates in his papers that, had the Court based its Guidelines calculation on 1.5 kilograms of cocaine base, he would have been sentenced at an offense level of 35 under the 2007 Guidelines. However, as explained above, under the 2007 Guidelines, 1.5 kilograms of cocaine base has a base offense level of 36. See § 2D1.1(2). Petitioner received an

increase of four levels based on his leadership role in the conspiracy.  Id. § 3b1.1(a). He also received a downward reduction of 2 levels for acceptance of responsibility, id. § 3E1.1(a), and an additional reduction of 1 point for assisting the Government. Id. at § 3E1.1(b).  By properly calculating these numbers, it is clear that Petitioner's offense level would have been 37.

That Respondent is not prejudiced by enforcement of the waiver is further borne out by addressing the lack of merits to his ineffective assistance claim. As noted, Petitioner motioned to vacate, set aside or correct his sentence due to ineffective assistance of counsel, pursuant to 28 U. S. C § 2255.  To succeed on a claim of ineffective counsel, Petitioner must satisfy the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668 (1984).  First, he must show that "counsel's representation fell below an objective standard of reasonableness." Id. at 688. Petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. at 689.  Second, Petitioner must show that "but for counsel's unprofessional errors, the result of the proceedings would have been different." Id. at 694.

With respect to the first prong, Petitioner's council acted reasonably by not contesting the Government's request at the sentencing hearing to change the agreed upon quantity of cocaine from "at least 1.5 kilograms" of cocaine base to 4.5 kilograms.  The plea agreement itself states that "the quantity of cocaine base that Rashad Smith is responsible for in relation to the charged conspiracy is "*at least* 1.5 kilograms." Plea Agmt., Sched. A, ¶ 2 (emphasis added).  To establish that the Government breached a plea agreement, Smith would have to show that the Government's conduct did not "fall[ ] within the range of expectations reasonably understood by [the defendant] when [he] entered [his] plea of guilty …." U.S. v. Larkin, 629 F.3d 177, 186 (3d

Cir. 2010).[4] Since the Government could raise the quantity of base cocaine without breaching the "at least 1.5 kilograms" language in the plea agreement, and the Government proffered evidence of the higher quantity, Petitioner's counsel could not have successfully argued that it was beyond the range of Smith's reasonable expectation that the Government would proffer more than 1.5 kilograms at sentencing. Accordingly, Smith's counsel acted reasonably by not contesting the higher amount.

Moreover, based on the above analysis, Petitioner also fails to satisfy the second Strickland requirement—that the result of the proceeding would have been different. Since the sentencing guidelines for offense level 37 and 39 are identical under the 2007 version of the Guidelines, even if Petitioner's council acted unreasonably, it did not alter the outcome of the proceedings. Accordingly, the Court concludes that Smith waived his right to challenge his sentence on collateral attack and the enforcement of the waiver would not result in a miscarriage of justice.

Smith, further, contends that he did not waive his right to challenge the Court's criminal history calculation. On this point, he is correct. The plea agreement specifically states that the parties reserve the right to appeal the Court's criminal history calculation. Thus, he is not precluded from raising this challenge.

Although Smith may challenge the Court's criminal history calculation on collateral attack, his claim is not meritorious. He argues that the Court improperly relied upon a 1998

---

[4] The breach-of-plea agreement analysis is a three-step one. First, the court must "consider the relevant paragraphs from the plea agreement and a description of the alleged improper conduct of the government." Id. "Second, [the court must] evaluate the conduct and determine whether it violates the government's obligations under the plea agreement." Id. Third, if the court determines "that the government breached its duty under the plea agreement, [the] final step is to fashion the appropriate remedy." Id.

conviction to conclude that he was a career offender. As explained *supra*, Smith's counsel noted at the sentencing hearing that the 1998 offense occurred during the time of the instant drug conspiracy for which Smith was being sentenced, which began in 1997. In Smith's view, this offense should not have been considered under U.S.S.G. § 4A1.2, which defines a "prior sentence" as one that is "for conduct not part of the instant offense," id. at (a)(1), because the 1998 conviction was "part and parcel of the same course of conduct that is within the time-frame of the instant conspiracy." Def. Br. dated April 25, 2011 at 4. Note 1 to Guideline § 4A1.2 instructs that "[c]onduct that is part of the instant offense means conduct that is relevant conduct to the instant offense under the provisions of section 1B1.3." And, Guideline § 1B1.3 states that relevant conduct includes "all acts and omissions committed . . . by the defendant; and . . . that occurred during the commission of the offense of conviction …."

Even assuming Smith is correct that the 1998 conviction should not have been included in the career offender calculation, criminal history category VI applied regardless of Smith's career offender status. More to the point, the Court expressly stated at the sentencing hearing that it was *not* relying on Smith's potential career offender status. Indeed, Smith's total criminal history points amounted to 20. Even deducting the 3 points he received for the 1998 conviction, see PSR ¶ 213, his total criminal history points would nonetheless be 17 which is still well above the 13 points needed to qualify for a Category VI criminal history under the 2007 Guidelines. See 2007 Guidelines, Chpt. 5, Part A. Accordingly, Smith's argument fails as his sentence would not differ even if the Court determined that he was not a career offender or if the Court deducted the 1998 conviction from his criminal history point calculation.

In sum, Smith waived his right to challenge all non-criminal history aspects of his sentence on collateral attack and his criminal history challenge fails on the merits. Accordingly, his petition is dismissed.

*Appointment of Counsel and Evidentiary Hearing*

Smith seeks appointment of counsel to represent him in the instant proceeding. Needless to say, because his Petition is dismissed herein, his request for counsel is moot and therefore denied. Smith's request for an evidentiary hearing is likewise denied. Rule 8(a) of the Rules Governing Section 2255 Proceedings directs that "[i]f the motion is not dismissed, the judge must review the answer, any transcripts and records of prior proceedings . . . to determine whether an evidentiary hearing is warranted." Because the Court dismisses Smith's Petition, no evidentiary hearing is required.

**CONCLUSION**

For the foregoing reasons, the Government's motion to dismiss will be granted. Petitioner's motion to appoint counsel and for an evidentiary hearing is denied.

Dated: July 8, 2011

/s/ Freda L. Wolfson
Freda L. Wolfson, U.S.D.J.